Concurrence by Judge HURWITZ;
Dissent by Judge REINHARDT
OPINION
N.R. SMITH, Circuit Judge:
Candace Lee Fox pleaded guilty to second-degree murder in 1984 in California Superior Court and, pursuant to a plea agreement, was sentenced to a term of imprisonment of fifteen years to life. Approximately five years later, Pox successfully petitioned to withdraw her guilty plea after establishing that the sentencing court failed to inform her that she would receive a mandatory term of lifetime parole as a direct consequence of her plea. At her subsequent trial, Fox was convicted of first-degree murder, first-degree burglary, and the special circumstance that the murder was committed in the course of a burglary. She was sentenced to life imprisonment without the possibility of parole. In this 28 U.S.C. §2254 habeas proceeding, Fox now argues that the State originally promised her a term of imprisonment no greater than seven and one-half years in exchange for her plea, and asks for specific performance of that purported agreement.
We refuse Fox’s request and affirm the district court, because Fox chose in the state habeas proceedings to seek vacation of her conviction, rather than specific performance of the purported plea agreement. She therefore has no due process right to specific performance of the rescinded agreement.
FACTUAL BACKGROUND
In June 1984, Fox, Janet Meyer, Scott Peters, and Eddie Rangel drove to Lewis Levy’s apartment to collect $100 that Levy allegedly owed Meyer for sexual services. Meyer told the others that Levy had $20,000 to $30,000 in travelers checks in his apartment. The group forced their way into the apartment and held Levy at gunpoint while they searched for cash and travelers checks. After they found Levy’s wallet and $20,000 in travelers checks, Meyer and Rangel departed to purchase cocaine, leaving Fox and Peters with Levy.
Levy took this opportunity to run for the door. Peters struck Levy over the head with the barrel of his revolver until the handle broke. Peters then attempted to shoot Levy, but his gun jammed. Fox handed Peters a large steak knife from Levy’s kitchen. Peters attempted to stab Levy twice, but the blade bent and did not penetrate. At that point, Levy fell to the ground nearly unconscious. When Meyer and Rangel returned with the cocaine, Levy remained semiconscious on the ground. After Rangel left, Peters explained to Meyer that Levy had tried to escape.
After Fox, Peters, and Meyer used the cocaine, Meyer stated that she was not leaving the apartment until Levy was dead. Meyer took a Swiss Army knife from her pocket and repeatedly stabbed Levy. Fox struck Levy over the head with a beer bottle, and Peters attempted to strangle Levy with a phone cord. Nonetheless, Levy was still alive. Peters then left the apartment and waited in Fox’s car. Twenty minutes later, Fox and Meyer left the house with two shopping bags containing the gun and knives used in the attack. They told Peters that Levy was dead.
The next day, the group cashed several of Levy’s travelers checks and purchased drugs. The following morning, Meyer’s *981 roommate called the police after overhearing an argument between Meyer and Fox about the murder. The police questioned Meyer, who disclosed the location of Levy’s body. After further investigation, the police arrested Fox, Meyer, and Peters.
PROCEDURAL BACKGROUND
A. Fox’s Guilty Plea and Sentence
Fox, Meyer, and Peters were charged with first-degree murder, first-degree burglary and robbery, and the special circumstances of (a) murder during the commission of a robbery and burglary and (b) use of a deadly weapon in the murder, making them eligible for the death penalty. Fox agreed to plead guilty to second-degree murder[1] in exchange for testifying against Peters.[2]
The plea agreement was not reduced to writing. Fox argues that she was promised she “would be paroled after serving 7.5 years with good behavior.” The State contends that Fox was promised she would be sentenced to fifteen years to life in prison, but would be eligible for parole consideration after seven and one-half years. Fox’s change of plea hearing on November 6, 1984, supports the State’s contention:
PROSECUTOR: By way of sentence ... you’re going to receive — as we discussed, you’re going to receive 15 years to life on this case. Do you understand that?
FOX: Yes.
PROSECUTOR: That is the sentence for second degree murder. There are no enhancements. It’s a straight second degree and you’re going to receive a sentence from [the court] of 15 years to life.
FOX: Yes.
PROSECUTOR: And do you understand that it’s up to you how much time you will do. It’s indeterminate. We can make no promises or representations on what the Board of Prison Terms will or will not do or when they will release you. There is a life-time top. Do you understand that?
FOX: Yes.
After being so advised, Fox pleaded guilty. The court accepted her plea as knowing and voluntary. There is thus no contest that Fox agreed to a sentence of fifteen years to life. But, Fox was not advised during the plea colloquy that she also faced a lifetime term of parole when released.
At the sentencing hearing, Fox’s counsel asked for a continuance to amend the probation report. The court responded: “I don’t understand exactly what you’re doing here, Mr. Ficht. She is going to receive a sentence of fifteen to life, is that correct? Fifteen to life, and that’s going to be her sentence.” In response, Ficht stated that Fox’s probation report was “the most outrageous document I’ve sden.” The court told Ficht to “file an amendment. She’s going to be there for quite awhile. I don’t understand what the difference is. She should get going. She’s losing time.” Any parole consideration was only discussed during the following exchange:
FICHT: Also, if I may, for the record, Your Honor, I believe the People have indicated as part of the plea bargain that [Fox would] be looking at obtaining probation — parole, excuse me, in seven and a half years. Is that correct, [prosecutor]?
PROSECUTOR: That’s correct.
*982 TRIAL COURT: All right. Understand that?
Fox now argues that this exchange “modified the plea agreement” to require that she be paroled after seven and one-half years in prison. However, neither the parties nor the court acknowledged any modification of the plea agreement at the hearing. Following the exchange between Fieht and the prosecutor, the court sentenced Fox to fifteen years to life in state prison without any reference to parole eligibility or release on parole, stating: “All right. Miss Fox, the court has read and considered the probation report. Probation is denied. You are sentenced to the state prison for the term prescribed by law, which in this case is fifteen years to life.” Fox did not object.
B. Post-Conviction Proceedings
On July 1, 1986, Fox filed her first petition for a writ of habeas corpus in state Superior Court. Rather than seeking specific performance of the alleged plea agreement, Fox instead sought to withdraw her plea of guilty on two grounds.
First, Fox alleged that, when she entered her plea, she “did not understand that her term could exceed seven and one-half years even if her prison behavior were good.” Instead, Fox claimed that she believed that she was “entitled to release after seven and one-half years, provided that she behaved properly in state prison.” Fox acknowledged that such a belief was contrary to California law, because a petitioner “is not entitled to release after serving the minimum period of incarceration.” Fox also acknowledged that “no firm promise ... was given [to her] before her actual sentencing” as to eligibility for parole in seven and one-half years. However, Fox maintained (citing the portion of the sentencing proceedings excerpted above) that the “the parties understood that if [Fox] was cooperative and fully truthful in her testimony, she would be eligible for parole after 7 1/2 years ... and in fact would receive parole if she behaved herself in state prison.” Fox also argued that, before entering her plea, she “was not advised of the mandatory post-incarceration parole term.” Fox asserted that, had “she known the full consequences of her guilty plea, she would not have pled guilty.”
Second, Fox asserted that she had received ineffective assistance of counsel during the plea process and that she was “not in fact guilty of second degree murder.” [3] Fox argued that her previous attorney “erroneously” told her that, if she went to trial, she could not use a defense of duress; her new counsel, on the other hand, assured her that she “had a good defense of duress.” Fox argued that her former attorney failed to “comprehend and/or advise her of the defenses available” and that she entered her plea after “reifying] upon [such] erroneous legal advice.” The Superior Court denied this first habeas petition, citing the guilty plea transcript.
On August 26, 1986, Fox filed a second petition in the Court of Appeal, alleging “that her sentencing was unlawful and the matter should be remanded for resentenc-ing.” In this petition, Fox repeatedly insisted that she sought “withdrawal [of] her plea of guilty,” making the same arguments as those in her Superior Court petition. On September 4, 1986, the Court of Appeal denied the petition as not ripe, because Fox had not yet served seven and one-half years in prison.
On January 24, 1989, after serving just over four and one-half years in prison, Fox *983 filed a third habeas petition in the state Superior Court. The arguments echoed those in her previous petitions. Fox asked to withdraw her guilty plea, asserting that it was not voluntary and that her counsel was ineffective. Fox also argued that (1) newly discovered evidence exonerated her of the murder;[4] (2) defense counsel failed to throughly investigate and advise her regarding a viable duress defense; (3) she was not advised of a mandatory parole term after incarceration and “would not have entered a guilty plea if she had known of this lifetime parole”; and (4) she did not understand that her period of confinement would exceed seven and one-half years with good prison behavior. Importantly, this petition again did not seek specific performance of the alleged plea agreement. On October 13,1989, the Superior Court granted the habeas petition, setting aside Fox’s conviction and granting her a new trial on the basis that she had not been informed before entering the plea that she faced lifetime parole. The court did not address Fox’s other arguments.
On November 26, 1990, shortly before the new trial was to begin, Fox filed a motion seeking, for the first time, to enforce the previous plea agreement as she understood it — that is, assuring release after seven and one-half years — or, in the alternative, preventing the State from seeking more than a second-degree murder conviction at trial. The State argued that, because Fox had successfully withdrawn her plea of guilty, there was no plea agreement to enforce. The Superior Court denied “specific performance of the original case settlement.”
Fox was tried on the original charges of first-degree murder, first-degree burglary, and the special circumstance that the murder was committed in the course of a burglary. On January 28, 1992, the jury returned guilty verdicts on all charges. On May 13, 1992, Fox again requested that the court order specific performance of her prior plea bargain, arguing she was entitled to eligibility for parole in seven and one-half years. On May 29, 1992, the court denied the motion and sentenced Fox to life imprisonment without the possibility of parole.
Fox appealed, asserting, among other things, that “the trial court erred in denying appellant’s motions for specific performance of her plea bargain,” citing Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), for the proposition that specific performance is a remedy for breach of a plea agreement.[5] On March *984 30, 1994, the California Court of Appeal affirmed Fox’s conviction. The court concluded that Fox was not entitled to specific performance of her plea bargain, stating that:
When Fox pled guilty in 1984, she got what she bargained for, a sentence of 15 years to life, with a promise of parole in seven and one-half years. Five years into her sentence (with only two and one-half years to go), Fox decided she didn’t like the deal she’d made, petitioned for a writ of habeas corpus and succeeded in having her plea set aside, on the ground she had not been fully advised of the consequences of her guilty plea (her alternative ground of duress was rejected). She clearly felt very strongly that the obligation of a lifetime on parole was not something she could accept.... She got exactly what she asked for — her plea was set aside and the People were required to prove the charges against her.[6]
Fox then filed a petition for review in the California Supreme Court which was summarily denied on June 30 1994.
On April 22, 1997, Fox filed a new habe-as petition in the Superior Court, which was denied on May 14, 1997. Fox filed another habeas petition in the Court of Appeal on April 23, 1998. On July 24, 1998, that court remanded for an evidentiary hearing on whether Fox received ineffec-five assistance of counsel in connection with the habeas petition that resulted in her guilty plea being withdrawn. The Superior Court “cabined” its inquiry to the question of whether counsel had advised Fox that, if she successfully withdrew her plea, she could face a new trial and a longer sentence, including a potential life sentence without the possibility of parole. During the two-day hearing, Fox’s habeas counsel, Rowan Klein, testified that he had advised Fox that, if her habeas petition were granted, she would go back to square one and face the possibility of a sentence of life without parole. When asked if he considered seeking specific enforcement of the original plea bargain prior to seeking to withdraw the plea, Klein responded,
I’m sure I did but ... [the reference to obtaining parole in seven and a half years wasn’t] a plea bargain because it’s an attorney uttering incompetent words at the time of sentencing. It’s not something that is legally binding on The Court or the District Attorney, unfortunately. I mean, you can try and turn it into that through alliance and whatever, but, legally, it probably isn’t the strongest argument. And that’s why I sought relief on the stronger argument, which was the failure to advise her of the parole consequences.... My assessment was that the comments of Bruce Ficht [Fox’s counsel at sentencing] are ... an *985 indication that he didn’t know what he was taking about . -.. with respect to the meaning of a 15-to-life sentence. To me, a plea bargain is when the parties may-have a discussion at the time of the plea, not when an attorney makes a gratuitous comment at the time of sentencing.
The Superior Court denied Fox’s petition, finding that she had been advised prior to the 1989 grant of habeas “of all the possible ramifications that were legally available, including — and it may even have been the death penalty — but certainly the option of life without the possibility of parole; that she’d go back to square one.”
On February 9, 2001, Fox filed a new habeas petition in the California Court of Appeal, which was denied without explanation or citation to authority on August 15, 2001. On November 24, 2003, Fox filed a habeas petition in the California Supreme Court, which was denied on July 14, 2004, in an order stating: “Petition for writ of habeas corpus is DENIED. (See In re Robbins (1998) 18 Cal.4th 770, 780, 77 Cal.Rptr.2d 153, 959 P.2d 311.).”
Fox filed a pro se 28 U.S.C. §2254 habeas petition in the district court on August 13, 2004, claiming that the state courts denied her due process rights by failing to specifically enforce her 1984 plea agreement. A magistrate judge ultimately recommended denying the petition, noting that Fox had “successfully moved to withdraw her guilty plea before she was eligible for release on parole; therefore, the State could not have actually breached the parole agreement in the manner petitioner claims.” The district court adopted the report and recommendation, denied the petition, and issued a certificate of appealability on the question of the specific performance of Fox’s 1984 plea agreement. This appeal timely followed.
STANDARD OF REVIEW
The district court’s denial of a petition for a writ of habeas corpus is reviewed de novo. Jones v. Taylor, 763 F.3d 1242, 1245 (9th Cir. 2014). “[A] federal district court’s findings and its adoption of the findings of a federal magistrate judge are reviewed under the clearly erroneous standard.” Sanders v. Ratelle, 21 F.3d 1446, 1452 (9th Cir. 1994).
Under the Anti-Terrorism and Effective Death Penalty Act (“AEDPA”), a federal court may not grant a habeas petition filed by a person in state custody:
with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
28 U.S.C. § 2254(d). However, where “no state court has adjudicated [the] claim on the merits, and the state has established no procedural bar to its consideration, the strictures of 28 U.S.C. § 2254(d). do not apply, and our review is de novo.” Riley v. McDaniel, 786 F.3d 719, 723 (9th Cir. 2015); see also Chaker v. Crogan, 428 F.3d 1215, 1221 (9th Cir. 2005) (applying de novo standard of review to a claim in a habeas petition that was not adjudicated on the merits by the state court); Lewis v. Mayle, 391 F.3d 989, 996 (9th Cir. 2004) (same).
AEDPA applies '‘to a single state court decision, not to some amalgamation of multiple state court decisions.” Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005). “When more than one state court *986 has adjudieated a claim, we analyze the last reasoned decision.” Id. at 1091 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803-04, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)). Under Ylst, we only look through the last state court decision to a prior decision on the merits if the last decision is unreasoned, that is, if the decision “does not disclose the reason for the judgment.” 501 U.S. at 802, 111 S.Ct. 2590; see also Castellanos v. Small, 766 F.3d 1137, 1145 (9th Cir. 2014) (“[A] state supreme court’s summary denial of discretionary review, which generally does not state a reason for that denial, is not a ‘reasoned’ decision under AEDPA, and we must ‘look through’ that unexplained decision to the last court to have provided a ‘reasoned’ decision.”).
The last “reasoned” decision here was the California Supreme Court’s 2004 order denying Fox’s habeas petition with a citation to In re Robbins, 18 Cal.4th 770, 780, 77 Cal.Rptr.2d 153, 959 P.2d 311 (1998). However, the citation to Robbins indicated that the decision rested on the untimeliness of Fox’s petition, not on the merits of her constitutional claims. See Walker v. Martin, 562 U.S. 307, 313, 131 S.Ct. 1120, 179 L.Ed.2d 62 (2011) (“A summary denial citing ... Robbins means that the petition is rejected as untimely.”). The State has now waived the affirmative defense of procedural default that formed the basis of the 2004 California Supreme Court’s reasoned decision. The last reasoned decision on the merits of Fox’s current claims is the affirmance of her conviction on direct appeal by the California Court of Appeal in 1994.
The State urges that we apply AEDPA deference to the 1994 Court of Appeal decision. But, we need not decide that issue. We may “deny writs of habeas corpus under § 2254 by engaging in de novo review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review.” Berghuis v. Thompkins, 560 U.S. 370, 390, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010). We conclude that, even under de novo review, Fox cannot prevail.
DISCUSSION
Fox claims she has a due process right to specific performance of her original plea deal, in- which she alleges the State promised to release her from prison after seven and one-half years. For purposes of our analysis, we assume (without deciding) that the State promised Fox release after seven and one-half years and that the State breached that promise. Nevertheless, Fox is not entitled to specific performance of her plea agreement, because she voluntarily chose to withdraw her guilty plea, thereby voiding her plea agreement. There is thus no plea agreement to enforce. Under these circumstances, there is no precedent suggesting that Fox was denied due process by denying her specific performance.
As the Court of Appeal observed, Fox’s successful habeas petition sought only to withdraw her guilty plea as not knowing and voluntary, rather than to enforce a plea agreement. At no point in the habeas proceedings, which culminated in the state court’s order allowing Fox to withdraw her plea, did Fox seek to enforce the plea agreement; rather, she sought to set it — ■ and the accompanying guilty plea — aside. Although Fox argued that she was serving a longer sentence than she expected, she advanced that argument solely to show that she was not advised of the extent of the sentence she would serve if she pleaded guilty. She simultaneously argued both her actual innocence and that the plea was invalid because she was never informed of the possibility of a parole term following release. The record indicates that Fox *987 sought to withdraw her plea so that she could assert defenses to the charges against her. Indeed, Fox’s habeas counsel testified he made a strategic decision not to seek to enforce the alleged plea agreement. Fox did not attempt, until the eve of her trial, to hold the State to the deal she believed it made with her.
Fox’s current petition rests on the theory that a criminal defendant has a due process right to bind the government to a plea agreement even after choosing to withdraw the plea rather than seek specific performance of the plea agreement. Fox identifies no precedent recognizing that right, nor have we found any. Indeed, the weight of persuasive precedent cuts the other way. We have instead explained that “[w]hen the district court exercises its power under the. Federal Rules to reject a plea agreement or permit a defendant to withdraw his plea, it is clear by implication that the parties are consequently released from their obligations under the plea agreement.” United States v. Partida-Parra, 859 F.2d 629, 634 n.6 (9th Cir. 1988). Moreover, a defendant who “chose of his own accord to challenge an aspect of the proceedings against him, ... [takes] a calculated risk of’ having the original charges reinstated. Taylor v. Kincheloe, 920 F.2d 599, 603-04 (9th Cir. 1990). The Sixth Circuit has come to the same conclusion, holding that when a defendant succeeds in withdrawing a guilty plea entered pursuant to a plea agreement, the plea agreement is “nullified” and “the government [is] no longer bound by its promises therein.” United States v. Jones, 469 F.3d 563, 566 (6th Cir. 2006). In the course of discussing prosecutorial vindictiveness, the Fifth Circuit noted “[we] see no distinction between a defendant’s refusal to plead guilty and a defendant’s successful withdrawal of a guilty plea.... In.both circumstances the' defendant has, in essence, refused the Government’s offer of a plea and exercised his right to force the Government to prove its case.” United States v. Saltzman, 537 F.3d 353, 361 (5th Cir. 2008). Fox rescinded her plea agreement; there was nothing left to enforce.[7]
Fox urges us to apply state contract law. See United States v. Barron, 172 F.3d 1153, 1158 (9th Cir. 1999) (en banc) (“[W]e have frequently analyzed plea bargains on contract principles.”). However, doing so does not aid her. Under California law, “[r]escission extinguishes a contract, rendering it void ab initio, as if it never existed.” DuBeck v. Cal. Physicians’ Serv., 234 Cal.App.4th 1254,184 Cal.Rptr.3d 743, 750 (2015). By obtaining a writ of habeas corpus nullifying her plea as not knowing and voluntary, Fox also nullified her plea agreement. Whatever terms were in that agreement are no longer operative.[8]
In Santobello v. New York, the Supreme Court held that the remedies for a breach of a plea agreement were'either specific performance of the agreement or rescission of the entire agreement and withdrawal of the guilty plea, to be determined *988 by the state court based on what “the circumstances of [the] case require.” 404 U.S. 257, 263, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Where rescission is unable to repair the harm done by the government’s breach, and where the defendant has upheld her end of the bargain, we have held that “specific performance [is] the only viable remedy.” Brown v. Poole, 337 F.3d 1155, 1161 (9th Cir. 2003). Indeed, we have mandated specific performance as a remedy even where the sentence the prosecutor promised to a defendant was not a sentence allowed for under state law. Buckley v. Terhune, 441 F.3d 688, 699 (9th Cir. 2006) (en banc).
But, here, rather than seek specific performance, Fox chose to withdraw her guilty plea, voiding the plea agreement. She sought one of the remedies under Santobello, and received it.[9] Even if she had sought specific performance, Santobello “leave[s] to the discretion of the state court” whether the circumstances of the case require specific performance or an opportunity to withdraw the plea. 404 U.S. at 263, 92 S.Ct. 495. No binding Supreme Court decision finds a constitutional violation when a state court chooses the remedy a petitioner expressly chose or when she maintains her innocence of the original charges. Nor does any decision of which we are aware find that a state court abuses its discretion by declining to enforce a plea agreement which would impose a term of parole to which the defendant claims she was never made aware and to which she steadfastly objects.
Fox now asserts that rescission of the plea agreement (1) was forced by the State’s breach and (2) she never waived her right to assert a breach of the plea agreement. We have found no authority, and Fox cites none, to support her first contention. In any event, the State did not coerce Fox to seek to withdraw her plea, rather than seek to enforce the alleged agreement. Rather, the State steadfastly maintained that Fox was entitled to no relief at all. At the time Fox sought state habeas relief, Santobello was the law of the land. Nothing prevented Fox, acting with the assistance of counsel, 'from seeking specific performance. Yet, she chose not to do so; her counsel, whose effectiveness is not today at issue, testified that he considered but rejected that option.
Fox maintains that, even after withdrawing her plea, she had a due pro *989 cess right to assert a breach of the plea agreement, and this right was never waived. We agree that Fox had a constitutional right to enforce the plea agreement, see Doe v. Harris, 640 F.3d 972, 975 (9th Cir. 2011) (en banc), and that a waiver of a constitutional right must be knowing and voluntary, see Schell v. Witek, 218 F.3d 1017, 1023 (9th Cir. 2000). But “even constitutional rights can be waived if not timely asserted.” Hill v. Blind Indus. & Servs. of Md., 179 F.3d 754, 758 (9th Cir. 1999). If there were a time for Fox to assert a breach of her plea agreement, it was before the guilty plea was withdrawn and the agreement was rescinded.
By the time Fox sought specific performance, the plea agreement had been rescinded. We confronted similar circumstances in United States v. Burdeau, 168 F.3d 352 (9th Cir. 1999). In Burdeau, the defendant entered into a plea agreement that specified he was to receive a maximum of ten years’ imprisonment on a robbery count and would have a gun charge dismissed. Id. at 355. The defendant later withdrew his plea and asserted a new defense to the charges. Id. After the district court ruled that the defense was unavailable, the defendant sought to reinstate his original plea deal. Id. The State refused, and we held that the district court was not required to reinstate the plea. Id. at 358. Burdeau stands for the proposition that, once a plea agreement is rescinded, the State need not reoffer the same terms, and the trial court is not required to enforce the agreement’s now-defunct provisions.
We agree with our dissenting colleague that the circumstances of this case are unfortunate. The others convicted of the offense for which Fox is serving a life sentenced received lesser terms, and she kept her promise of cooperation to the State. Indeed, she would have been better off had the state court never granted her habeas petition; she would at least now be eligible for parole. But she chose to rescind a plea agreement that treated her as well as her co-defendants, despite her counsel’s advice that this could return her to ground zero. No Supremfe Court authority or other precedent establishes that the Due Process Clause requires the enforcement of a plea agreement under these circumstances. Accordingly, the district court did not err in denying Fox’s § 2254 petition.
AFFIRMED.

. When Fox pleaded guilty, second-degree murder in California was subject to a mandatory minimum of fifteen years to life. Cal. Penal Code § 190(a).

. On November 9, 1984, Fox testified for nearly five hours at Peters’s preliminary hearing. Peters later pleaded guilty to second-degree murder. Meyer also pleaded guilty to second-degree murder.

. The dissent states that Fox "never seriously denied her guilt.” Dissent 60. However, Fox specifically claimed in her first habeas petition that "she [was] not in fact guilty of [the] offense and was unaware of [the defense of duress] at the time she entered her plea.”

. Fox also alleged that she received letters from Peters, in which he took full responsibility for the murder.

. The dissent states that the State changed its position at this point and "admitted for the first time that, pursuant to the plea agreement, Fox was to serve 'about 7 1/2 years.' ” Dissent 36. We disagree with this characterization of the State’s argument.
From the beginning, the State has maintained that the parties bargained for a sentence of fifteen years to life for second-degree murder. The State has conceded that, pursuant to the plea agreement, Fox would be eligible for parole after seven and one-half years, though the only evidence in the record of such a promise was the exchange between Fox's counsel and the prosecutor at the sentencing hearing. The State has also argued that, notwithstanding such a promise, the minimum parole eligibility under California case law for Fox’s sentence was ten years, and thus a promise of eligibility before that time would have been unenforceable.
Before the California Court of Appeal, the State argued that the plea agreement was no longer enforceable because Fox had withdrawn her plea. The statement in the State’s brief that, "pursuant to the plea agreement, [Fox] would serve about 7 1/2 years” was not, as the dissent puts it, evidence that the State had previously lied, but rather .a shorthand version of the plea agreement between the parties. The California Court of Appeal then *984 based its decision on the State's statement in its brief.

6. The Court of Appeal acknowledged "the inevitability of a habeas petition attacking the competency of the attorney who filed the petition to set aside Fox’s guilty plea.” However, it noted that such a claim would necessarily require "an evidentiary hearing to determine what Fox's attorneys told her at the time the decision was made to attack the guilty plea [given that she had already served over four years of her sentence].” Thus, such a "petition should be addressed to the trial court, not to us.”
The Court of Appeal concluded that Fox received "a sentence of 15 years to life, with a promise of parole in seven and one-half years,” and thus "got what she bargained for.” However, as Fox acknowledged in her first habeas petition, she was not entitled to parole after seven and one-half years under her original sentence. This error is not consequential, because the Court of Appeal's ultimate conclusion — that Fox “got exactly what she asked for” when her habeas petition was granted and the original conviction set aside — is correct.

. Fox does not claim prosecutorial vindictiveness in this habeas proceeding.

. There are limits to the analogy to contract law: "A plea bargain is not a commercial exchange.... On rescission of the agreement, the prisoner can never be returned to his 'original position': he has served time by reason of his guilty plea and his surrender of basic constitutional rights.” Barron, 172 F.3d at 1158. In that case, which involved a 28 U.S.C. § 2255 petition, this court sitting en banc refused to require a retrial, that is to completely void the guilty plea, when one of the counts of conviction later turned out to be unlawful. Id. at 1161. However, Barron turned on an interpretation of the scope of the relief available under § 2255. Id. at 1159. Fox seeks relief under § 2254. Thus, we are called on to determine what due process requires, not what relief Fox might be afforded were she a federal prisoner.

. Our recent decision in Cuero v. Cate, 827 F.3d 879, 2016 WL 3563660 (9th Cir. 2016), is not to the contrary. In Cuero, the defendant had pleaded guilty pursuant to a written plea agreement. The day before sentencing, the State moved to amend the complaint in a manner that would substantially increase the defendant’s sentence. The Superior Court granted the motion and allowed the defendant to withdraw his guilty plea. The defendant argued in his subsequent habeas petition that the State had breached the plea agreement and sought specific performance. The panel granted the petition, finding that permitting the defendant to withdraw his guilty plea was not an adequate remedy and that the Superior Court unreasonably failed to apply principles of California contract law to the plea agreement.
Unlike the defendant in Cuero, Fox opted not to seek specific performance in her first habeas petition. Therefore, the Superior Court here did not fail to reasonably apply the principles of California contract law when it granted Fox the very remedy she requested.
The dissent disagrees with our characterization of Cuero, stating that "[h]ere, as in Cuero, the state breached its agreement, and here, as in Cuero, the breach resulted in the withdrawal of the plea agreement.” Dissent 1006. This is incorrect. Nowhere in Fox’s first habeas petition did she seek specific performance or argue that the government had breached the agreement. Instead, from the outset, Fox sought to withdraw her plea, arguing that "she did not understand” the terms of the agreement and that her lawyer had provided ineffective assistance. In short, Fox got exactly what she requested. Cuero did not.