**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

AUG 5 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JOHN ATLAS, Jr.,

Petitioner-Appellant,

v.

ERIC ARNOLD, Warden,

Respondent-Appellee.

No.   20-55452

D.C. No.
5:15-cv-01504-RSWL-RAO

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Ronald S.W. Lew, District Judge, Presiding

Argued and Submitted July 7, 2021
Pasadena, California

Before:  D.M. FISHER,[**] WATFORD, and BUMATAY, Circuit Judges.
Dissent by Judge WATFORD

Petitioner John Atlas, Jr., was convicted in California state court of dissuading

witnesses by force or fear.  The conviction stemmed from an incident in which Atlas

made threatening remarks to a couple while Atlas's acquaintance was arrested for

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable D. Michael Fisher, United States Circuit Judge for the
U.S. Court of Appeals for the Third Circuit, sitting by designation.

stealing their car. At trial, Atlas testified that he had been diagnosed with schizophrenia and prescribed medication, which he had failed to take the night before the incident.

On direct appeal from his conviction, Atlas argued that trial counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), because he failed to call Atlas's psychiatrist as a witness to testify about his mental illness. The California Court of Appeal rejected his claim, holding that Atlas failed to show any deficient representation prejudiced him. The California Supreme Court summarily denied his petition for review.

Thereafter, Atlas sought habeas relief under 28 U.S.C. § 2254 in federal district court, which stayed proceedings while Atlas exhausted state habeas remedies. He then filed a habeas petition in the California Superior Court, which denied his petition for two reasons: (1) the petition was not verified, and (2) relief was barred under *In re Waltreus*, 62 Cal. 2d 218 (1965). Under the *Waltreus* rule, "claims that have been raised and rejected on direct appeal" cannot support state habeas relief. *In re Scoggins*, 9 Cal. 5th 667, 673 (2020). Finally, Atlas filed a separate, verified petition in the California Supreme Court, which summarily denied relief. The district court then denied relief, and Atlas appealed. We review de novo, *Lambert v. Blodgett*, 393 F.3d 943, 964–65 (9th Cir. 2004), and affirm.

In considering a habeas petition under § 2254, the first issue is whether we

2

owe AEDPA deference under § 2254(d) and, if so, to which decision deference applies. We start with the California Supreme Court's denial of state habeas relief, as the last relevant state court decision. *Fox v. Johnson*, 832 F.3d 978, 985–86 (9th Cir. 2016). Because it is an unreasoned decision, there is a presumption that the court adopted the last relevant reasoned state-court decision. *Id.* This "look-through" presumption, however, may be rebutted by "strong evidence." *Sandgathe v. Maass*, 314 F.3d 371, 377 (9th Cir. 2002).

Here, the last reasoned decision is the California Superior Court's denial of state habeas relief. But strong evidence rebuts the presumption that the California Supreme Court adopted the Superior Court's decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (holding that "the nature of the disposition" and "surrounding circumstances" may inform the reasoning behind a state court's silent denial of relief). The Superior Court's first ground for denial—that the petition there was not verified—is clearly inapplicable to the decision in the California Supreme Court, where the petition was undisputedly verified.

The California Supreme Court also did not adopt the Superior Court's *Waltreus* ground for denial of relief. First, *Waltreus* does not apply to claims of ineffective assistance of trial counsel. *In re Robbins*, 18 Cal. 4th 770, 814 n.34 (1998). And we apply a "presumption that the state court knew and followed the law." *Lopez v. Schriro*, 491 F.3d 1029, 1037 (9th Cir. 2007). It is implausible that

3

the court unreasonably applied California law. Second, the state's briefing in the California Supreme Court did not even advance the *Waltreus* argument, unlike its briefing in the Superior Court. Third, the California Supreme Court granted California's motion to judicially notice the conviction of Atlas's mental-health expert, suggesting that the Supreme Court considered Atlas's ineffective assistance claim on the merits since the conviction only pertained to merits consideration. Finally, the California Supreme Court "denied" the petition, rather than "dismissed" it. *See Ylst*, 501 U.S. at 802 (noting that dismissal indicates a procedural decision, whereas a denial indicates a decision on the merits). This evidence rebuts the look-through presumption. We therefore presume that the California Supreme Court's denial was a decision on the merits. *See Harrington v. Richter*, 562 U.S. 86, 99 (2011).

Given the rebuttal of the look-through presumption, we now look to "the last related state-court decision that . . . provide[s] a relevant rationale" and apply AEDPA deference to it. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Because the Superior Court's decision here did not decide the ineffective assistance claim on the merits, *see Forrest v. Vasquez*, 75 F.3d 562, 564 (9th Cir. 1996) ("[A] *Waltreus* citation is neither a ruling on the merits nor a denial on procedural grounds."), we look further back to the Court of Appeal's decision on direct appeal.

Atlas contends, however, that the Court of Appeal decided a different

4

ineffective assistance claim than the one raised in his habeas petitions. In Atlas's view, his current claim was therefore never adjudicated on the merits and should be subject to de novo review. We disagree. Both on direct appeal and on collateral review, his claim is that trial counsel failed to sufficiently advance his mental illness defense to the mens rea element of his charges. This claim was decided in the Court of Appeal. Even supposing the minor differences between his ineffective assistance arguments are relevant, Atlas's habeas petition before the California Supreme Court raised the precise same issues as he does here and, as explained above, that court's decision was on the merits and is thus due deference.

Applying AEDPA deference to the Court of Appeal's determination that any deficient performance by Atlas's counsel did not prejudice him, we conclude that the decision is not unreasonable under § 2254(d). The court determined that Atlas's testimony made the jury "fully aware of his claims of schizophrenia and medications." Furthermore, the evidence against him was overwhelming— including Atlas's confession that he remembered telling the victims not to go to court and a credible officer's testimony as to his other threats—so that stronger evidence regarding his mental illness would have had no effect. A gang expert also testified that Atlas was an associate of a gang or its members and that his threatening statements would serve to raise his standing with the gang. Atlas has not shown that the Court of Appeal's conclusion is an unreasonable application of *Strickland*. *See*

*White v. Woodall*, 572 U.S. 415, 419 (2014) (Unreasonable applications are "objectively unreasonable," not "merely wrong" or even "clear[ly] erro[neous]." (simplified)).

The dissent would have remanded to the district court for an evidentiary hearing to develop the facts underlying Atlas's ineffective assistance claim. A petitioner is only entitled to an evidentiary hearing in federal district court if he alleges facts that, if proven, "would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). In undertaking this inquiry, federal courts must "take into account [AEDPA] standards in deciding whether an evidentiary hearing is appropriate." *Id*. "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.* "[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state court record.'" *Id.* (quoting *Totten v. Merkle,* 137 F.3d 1172, 1176 (9th Cir. 1998)).

Here, the California Court of Appeal determined that, due to the overwhelming evidence of Atlas's guilt, the addition of the expert witness testimony would only bolster the facts before the jury. We cannot say that this was an unreasonable determination of the facts under § 2254(d)(2). As the district court concluded, there was "no reasonable probability that presentation of the proffered evidence . . . would have raised a reasonable doubt in any juror's mind as to whether

Petitioner had the specific intent to commit the charged offenses," primarily because of the sharp contrast between Atlas's behavior at the time of the incident and his behavior when he is having an episode of mental illness. When suffering a psychotic episode, according to the record, Atlas acted in recognizably aberrant and incoherent ways, such as hitting the walls or his head and stating his fear of demons emerging out of the toilet. By contrast, at the time of the incident, Atlas waited to obtain his jacket from the victims' car, then clearly and specifically threatened the victims, warning them not to go to court and that he knew where the victims live. There is no evidence that Atlas was disconnected from reality. The threat was considered so genuine that an officer accompanied the victims home for their safety and the victims immediately moved from their home because they were frightened for their family. It was not unreasonable for the California Court of Appeal to hold there was no *Strickland* prejudice and that the result would have been the same even had Atlas's attorney presented additional evidence about Atlas's mental illness.

**AFFIRMED.**

*John Atlas, Jr. v. Eric Arnold,* No. 20-55452

WATFORD, Circuit Judge, dissenting:

I agree with my colleagues that the look-through presumption has been rebutted and that the California Supreme Court's summary denial of Atlas's ineffective-assistance-of-counsel claim should be treated as a decision on the merits. "Under California law, the California Supreme Court's summary denial of a habeas petition on the merits reflects that court's determination that the claims made in the petition do not state a prima facie case entitling the petitioner to relief." *Cullen v. Pinholster*, 563 U.S. 170, 188 n.12 (2011). Thus, the only question before us is whether Atlas in fact stated a prima facie claim for relief. If he did, the California Supreme Court's denial of the claim without holding an evidentiary hearing would be based on an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2). *See Nunes v. Mueller*, 350 F.3d 1045, 1053–56 (9th Cir. 2003).

Atlas's conviction for two counts of dissuading a witness by force or threat and for the benefit of a criminal street gang stems from a bizarre encounter on April 2, 2013. That morning, a stolen vehicle was found in the parking lot of a grocery store. Police arrested Dunell Crawford, who was later identified as a gang member. Atlas had received a ride from Crawford, an acquaintance of his, and waited with the police until the car owners arrived so that he could retrieve his

jacket from the car. When the car owners confirmed that the jacket was not theirs, police gave the jacket to Atlas and told him to leave. At that point, Atlas began walking back and forth, yelling, "Don't go to court," and "We know you live in Five Time" gang territory. He also made gunshot noises. All of this occurred in front of the police, who arrested Atlas as he continued yelling. A search of Atlas's person revealed two cigarette lighters, which prompted Atlas to yell that they would be used to burn the victims' house down. Atlas's jacket pocket contained medication that had been prescribed for his psychiatric condition.

At the time of the offense, Atlas was 43 years old and had no history of gang activity or membership. Atlas admits that he yelled "Don't go to court," but he does not remember the other threats and cannot otherwise explain his conduct. Although the victims felt frightened and intimidated, they also testified at trial that it seemed as though Atlas "was just drunk or something." According to a treatment note from the detention center, the day after the offense, while in custody, Atlas was "angry and hitting walls," reported having "auditory hallucinations," and "appeared to be responding to internal stimuli."

At trial, the State had to prove beyond a reasonable doubt that Atlas had the specific intent to dissuade the witnesses by force or threat and for the benefit of a gang. The trial court defined the specific intent requirement as acting "maliciously," meaning a person "unlawfully intends to annoy, harm, or injure

someone else in any way or intends to interfere in any way with the orderly administration of justice." Although Atlas's attorney presented a mental health defense, only Atlas testified in support of the defense, and the prosecution understandably characterized his testimony as "self-serving" without the support of even a mental health expert.

Atlas argued before the California Supreme Court on collateral review that his attorney rendered ineffective assistance of counsel by failing to retain a mental health expert and to investigate the basis for a potential mental health defense. Atlas asserted that a properly presented mental health defense would have rebutted the required specific intent for his conviction. Atlas supported his claim by submitting mental health records, declarations from his trial counsel and family members, and an expert evaluation prepared by Dr. Jason H. Yang. He also requested an evidentiary hearing to further develop the factual basis for his claim. The California Supreme Court nonetheless summarily denied his claim without first holding an evidentiary hearing.

In his federal petition for a writ of habeas corpus, Atlas requested an evidentiary hearing. When a state court has denied relief without holding an evidentiary hearing, a federal habeas court must grant a petitioner's request for an evidentiary hearing when three conditions are met. First, the petitioner must assert "a colorable claim," meaning the petitioner must "allege specific facts which, if

true, would entitle him to relief." *Earp v. Ornoski*, 431 F.3d 1158, 1167 & n.4 (9th Cir. 2005). Second, the petitioner must not have "failed to develop the factual basis of his claim in state court." *Hurles v. Ryan*, 752 F.3d 768, 791 (9th Cir. 2014); *see* 28 U.S.C. § 2254(e)(2). And third, the petitioner must show that the state court's decision was based on an unreasonable determination of the facts under § 2254(d)(2), a showing that is met if the petitioner can establish one of the circumstances described in *Townsend v. Sain*, 372 U.S. 293, 313 (1963). *Earp*, 431 F.3d at 1167. Atlas has met all three conditions.

First, Atlas has asserted a colorable claim of ineffective assistance of counsel. Under *Strickland v. Washington*, 466 U.S. 668 (1984), Atlas must establish both that his attorney's performance was deficient and that there is a reasonable probability that, but for those errors, the result of the proceeding would have been different. *Id.* at 687–88, 694. As explained below, Atlas has alleged specific facts that, if true, would entitle him to relief.

Dr. Yang's report and the mental health records demonstrate that Atlas has a history of serious mental health issues. Atlas first heard voices and saw ghosts as a child but was able to ignore them. After high school, he moved to England to play soccer and, by staying active, he was able to ignore the infrequent auditory or visual hallucinations. He raised a family and worked various jobs while in England until the age of 37, when he moved back to the United States. In 2009,

however, he began exhibiting severe psychiatric symptoms. Over the years, clinicians have diagnosed Atlas with variations of bipolar disorder, psychotic disorder, and schizoaffective disorder. Atlas was most recently diagnosed with schizoaffective disorder, bipolar type.

Atlas's mental health issues have contributed to previous run-ins with law enforcement and being placed on psychiatric holds. In December 2009, police brought Atlas in on his first documented psychiatric hold, when Atlas was hitting the walls and "afraid of demons coming out of the toilet." In February 2012, police brought Atlas to a hospital on another psychiatric hold after he walked into a McDonald's restaurant and "threatened to blow the place up."

Declarations from Atlas's family members corroborate his history of mental health issues. In late 2011 or early 2012, Atlas lived with his younger sister for a year and a half. She attested that Atlas acted strangely at times, "as though he had a split personality," and sometimes said "things that made no sense," including "things that would sound threaten[ing] to anyone who did not know him well." In late March and early April 2013, shortly before the offense conduct at issue here, Atlas lived with his grandmother. She attested that during that time, he was "acting very strangely" by blurting out "things that were weird or did not make sense," and would "talk about hearing voices."

Atlas's symptoms increased in severity shortly before his arrest on April 2,

2013. At the end of March 2013, Atlas went to a clinic to obtain a new medication regimen. A psychiatrist determined that he was in a manic state and presenting "building mania." Atlas was prescribed antipsychotic medication and mood stabilizers, but when police arrested him less than a week later, he had taken the antipsychotic medication for only three days after it had been prescribed. He did not take his medication the day before, the day of, or the day after the offense. He also had trouble sleeping and had not taken any of his mood-stabilizing medication.

Crediting these facts as true, as we must at this stage of the proceedings, the record before the California Supreme Court establishes that Atlas's trial counsel performed deficiently. "Trial counsel has a duty to investigate a defendant's mental state if there is evidence to suggest that the defendant is impaired." *Douglas v. Woodford*, 316 F.3d 1079, 1085 (9th Cir. 2003). Here, according to a declaration from Atlas's attorney, he failed to hire a mental health expert or investigate the basis for a mental health defense despite knowing about Atlas's history of mental health issues. His attorney could not make a strategic decision to forego hiring a mental health expert without first conducting a reasonable investigation that would allow him to make an informed decision. *See Weeden v. Johnson*, 854 F.3d 1063, 1069–70 (9th Cir. 2017). Even Atlas's lack of receptiveness to a mental health defense did not absolve his attorney of the duty to

at least investigate the basis for such a defense.  *See Douglas*, 316 F.3d at 1086.

The facts described above, if true, would also establish that Atlas was prejudiced by his attorney's deficient performance.  Had this evidence been presented to a jury, "the probability of a different result is sufficient to undermine confidence in the outcome."  *Weeden*, 854 F.3d at 1072; *see also Bloom v. Calderon*, 132 F.3d 1267, 1278 (9th Cir. 1997).  Counsel's presentation of a mental health defense should have rested on at least one medical opinion, as even the prosecution remarked during trial.  Dr. Yang's report placed Atlas's mental health history and his offense conduct in context.  Dr. Yang opined that when Atlas made the threatening statements to the victims on the street and in front of a police officer, he was suffering from "bouts of mania, paranoia, and disorganized outbursts."  As noted above, less than a week before his arrest, Atlas had started a new medication regimen, with which he was noncompliant at the time of the offense.  And at that point, the treatment provider indicated that Atlas was already presenting with "building mania."  Significantly, Dr. Yang emphasized in his report that it would have taken at least four weeks for the new medication to be fully effective.  Furthermore, comparing the offense conduct with the past McDonald's incident when Atlas was brought in on a psychiatric hold reveals further similarities:  Both times, Atlas was noncompliant with his medication and yelled what could be perceived as threats in public.

Had the evidence detailed above been presented to and credited by the jury, there is a reasonable probability that at least one juror would have concluded that Atlas did not harbor the specific intent required for the crime of dissuading a witness by force or threat and for the benefit of a gang. At the time of the offense, Atlas had no documented history of gang activity, and there is ample history of his mental health issues. Testimony from a qualified expert would have "added an entirely new dimension to the jury's assessment of the critical issue of . . . mens rea." *Weeden*, 854 F.3d at 1072.

The State argues that the California Supreme Court's summary denial was proper given credibility issues surrounding Dr. Yang. The California Supreme Court took judicial notice of state records showing that a few months after completing his psychiatric evaluation of Atlas, Dr. Yang pleaded guilty to making false material misrepresentations as part of an insurance fraud scheme. But when determining prima facie sufficiency, the California Supreme Court must draw all inferences in Atlas's favor and cannot make credibility determinations. *See Nunes*, 350 F.3d at 1055 n.7, 1056. Accordingly, any determination that Dr. Yang's report lacked credibility could not be made without granting Atlas an evidentiary hearing.

Second in the trio of conditions that Atlas must satisfy to obtain an evidentiary hearing in federal court, Atlas adequately developed the factual basis for his claim before the California Supreme Court. He submitted his mental health

records, declarations from his trial counsel and family members, and Dr. Yang's evaluation, thus providing the factual underpinning for his claim. He also requested an evidentiary hearing to further develop the facts supporting his claim. "A petitioner who has previously sought and been denied an evidentiary hearing has not failed to develop the factual basis of his claim." *Hurles*, 752 F.3d at 791.

Third, and finally, Atlas has established one of the circumstances described in *Townsend v. Sain*—namely, "the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing." 372 U.S. at 313; *see Hurles*, 752 F.3d at 791; *Earp*, 431 F.3d at 1169. When a state court's decision turns on the resolution of a disputed issue of fact—particularly when, as here, credibility determinations are at issue—an evidentiary hearing will usually be required in order for the state court's fact-finding procedure to be "adequate to afford a full and fair hearing." *Earp*, 431 F.3d at 1167, 1169; *see also Perez v. Rosario*, 459 F.3d 943, 950 (9th Cir. 2006). An exception exists when the record before the state court "conclusively establishes" the fact at issue, but that is not the case here. *Perez*, 459 F.3d at 951. In addition to Dr. Yang's report, Atlas submitted ample other evidence supporting Dr. Yang's ultimate opinion that Atlas was suffering from a manic episode during the offense conduct. Certainly, nothing in the record conclusively refutes that view. Atlas was not required to prove his claim "with absolute certainty" before being granted an evidentiary hearing.

*Nunes*, 350 F.3d at 1054.

Because the California Supreme Court's decision was "based on an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2), Atlas is entitled to an evidentiary hearing on his ineffective-assistance-of-counsel claim. *See Hurles*, 752 F.3d at 790–92; *Earp*, 431 F.3d at 1167. I would thus vacate the district court's judgment and remand for an evidentiary hearing.