Dissent by Judge CALLAHAN
OPINION
HURWITZ, Circuit Judge:
Sarah Weeden was convicted in California state court of felony murder and sentenced to twenty-nine years to life in prison for her role in a bungled robbery that occurred when she was fourteen. She was not present at the scene of the crime; the prosecution’s case rested on evidence of her role in planning and facilitating the robbery.
Weeden’s defense at trial consisted entirely of four character witnesses. Trial counsel did not seek an evaluation by a psychologist or present expert testimony about the effect of Weeden’s youth on her mental state. In post-trial proceedings, counsel claimed that he did not obtain an evaluation because the result might not support his defense strategy.
In a 28 U.S.C. § 2254 habeas corpus petition, Weeden claimed that her trial counsel provided constitutionally ineffective assistance of counsel. The state courts rejected this claim, finding that counsel’s refusal to investigate psychological testimony was a reasonable strategic decision. The district court denied habeas relief; we reverse and order the district court to issue the writ.
BACKGROUND
A Underlying Facts and Trial
In July 2005, Weeden and three other fourteen-year-old girls were walking down the street when a car approached.[1] Inside were four boys, including twenty-two-year-old Deovinesh Kumar and seventeen-year-old Navnil Chand. Kumar invited the girls to “party,” promising beer and “weed.” The girls declined, but one of them, Angela, gave the boys Weeden’s cell phone number. Later that night, Weeden and Angela met with two of their friends, fourteen-year-old John W. and sixteen-year-old Ryan Moore. Weeden told them about the interaction with Kumar and Chand. Moore suggested robbing them; Weeden replied “yeah, we should.”
Days later, Weeden told Angela that the robbery would take place at a park. Wee-den asked John to participate, but he refused. Moore told John’s cousin, Janee Hill, of a plan to rob some “East Indian boys” for “weed and money.”
*1067 On August 5, Weeden told Hill that the boys she met had been “crank calling” her and inviting her to a motel. Weeden told Hill that Moore was going to rob the boys. Hill warned that robberies can go wrong; Weeden responded “okay.”
That evening, after calling Weeden, Chand told Kumar that the girls they had encountered in July would meet them at a park. Kumar drove to the park. While waiting in the car, Chand spoke on the phone to a girl who said, “I’ll be there in two to three minutes.” Chand replied, “I’m waiting for you over here by the park.”
At the same time, Moore was with twenty-year-old Sirtice Melonson at a nearby park. Moore was on the phone with Hill, who in turn used a second phone to talk to Weeden. Weeden told Hill to ask Moore whether he saw the boys’ car; Moore said no. Weeden directed Moore to a different park, where Moore saw a gold car. Wee-den said “that’s them.”
Melonson approached the car, stuck a handgun in the window, and ordered Ku-mar and Chand to exit. Before they could comply, the gun went off. Kumar sped off amid further gunfire. Chand later died of a gunshot wound.
Phone records from that evening confirm that: (1) Chand called Weeden repeatedly until the shooting, (2) Weeden and Moore exchanged calls until approximately twenty minutes before the shooting, (3) Weeden was on the phone with Hill until the shooting, and (4) Hill called Moore multiple times before and after the shooting. Neither Hill nor Weeden was near the park. Months later, Weeden sent text messages to Moore acknowledging that she knew about the robbery plan in advance but denying that it was her idea.
The only defense evidence at trial came from four character witnesses; each testified that Weeden was not the sort of person who would plan a robbery. In closing argument, Weeden’s. counsel asserted that Melonson decided to commit the robbery without Weeden’s knowledge. He also urged the jury to consider Weeden’s age and manipulability:
Try to put glasses on of a 14-year-old girl.... You’re easily manipulated.... But the Prosecution wants to charge her as an adult, under adult standards. But you can take into consideration, put on those glasses of a 14-year-old girl and tee, hee, hee, older boys want to talk to me and what should I do and let’s send ’em on a wild good [sic] chase. That’s a 14-year-old girl, it just is, and you get to put those glasses on. And it’s [sic] easily manipulated by older people when she stepped into this mess of vipers. And blaming her for this is like blaming a child molest [sic] victim. She’s 14. She don’t [sic] know what she’s doing. She gets manipulated into sending these boys out to get stood up.
The jury found Weeden guilty of attempted robbery and first-degree felony murder, but acquitted her of attempted murder. Weeden was sentenced to twenty-nine years to life in prison.
B. The New Trial Motion
Represented by new counsel, Weeden moved for a new trial, claiming that her trial counsel was ineffective for failing to investigate or present psychological evidence. In support of the motion, Weeden submitted a psychological report from Lisa Perrine, Ph.D., who evaluated Weeden after the verdict. Dr. Perrine opined that although Weeden could comprehend the concept of robbery, “it is extremely unlikely she would intend to commit robbery or knowingly participate in one,” and “she would probably be slow to understand that a robbery was being considered by others if their intentions were not clearly articulated.” Dr. Perrine also found Weeden to be “quite passive and vulnerable to being manipulated by others,” and concluded she *1068 had “serious cognitive deficits (for example, 91% of people her age functioned] intellectually at a higher level),” “well below average language skills,” and “a strong tendency to miss important environmental cues.”
Weeden’s trial counsel stated in a declaration that he did not investigate .psychological testimony because he “did not consider a psychologist’s opinion to be relevant to the issues in this prosecution.” At an evidentiary hearing, trial counsel admitted that he had “contemplated” seeking a psychological evaluation, but did not do so because “regardless of what the doctor would have concluded, it would be inconsistent with the defense that I was putting forth.” Counsel also speculated the prosecution might have used the results of an examination against Weeden:
Q: You didn’t know what the doctor would conclude, though. Is that right?
A: No, that is true. That is true. But— for instance, if the doctor were to conclude that she was completely immature for instance and — and easy — easily manipulated, my concern would have been that the Prosecution would have used that to show that she didn’t understand perhaps the magnitude of a robbery, but still participated in it. So I had some concerns that that could be twisted and turned against her.
The state trial court denied the new trial motion, characterizing counsel’s failure to obtain a psychological examination as a “sound tactical decision.”
C. Direct Appeal
The California Court of Appeal affirmed Weeden’s conviction. The court disposed of Weeden’s ineffective assistance claim in four paragraphs. The first paragraph recited the familiar legal standard for establishing ineffective assistance of counsel set forth in Strickland v. Washington, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). People v. Melonson, Nos. C061352, C061800, 2013 WL 1987240, at *21 (Cal. Ct. App. May 15, 2013), as modified on denial of reh’g (June 14, 2013). The second paragraph concluded that counsel made a “reasonable tactical decision” not to seek a psychological examination because an examination “might undermine” his trial strategy:
Weeden contends trial counsel’s decision not to have her examined by a psychologist was not a sound tactical decision. However, trial counsel articulated a very reasonable tactical decision for not requesting such an examination. If the examination revealed Weeden was easily manipulated, the prosecution could claim this was evidence that although Weeden did not understand the magnitude of the robbery, she nonetheless went along with it. In essence, the examination might undermine the defense strategy trial counsel was pursuing at trial.
Id. The third paragraph acknowledged Weeden’s argument that Dr. Perrine’s testimony might have made a difference at trial, but, rather than determining whether the failure to present that testimony was prejudicial, the fourth paragraph reiterated the risk that such testimony “might well have undermined” counsel’s trial strategy:
In addition, Weeden argues the lack of psychological testimony on her lack of specific intent ‘undermines confidence in the outcome of this trial.’ According to Weeden, the testimony of Dr. Perrine would have raised a reasonable doubt as to whether Weeden harbored a specific intent to rob. Presented with Dr. Per-rine’s testimony, the jury would not have concluded Weeden joined in Melonson’s criminal intent to commit armed robbery.
Again, trial counsel pursued the defense that Weeden did not set up the *1069 robbery or agree to it. The testimony Weeden claims counsel was ineffective in failing to present might well have undermined this defense. Among Dr. Perrine’s findings was that Weeden had a strong tendency to be a passive follower, which might have led the jury to conclude she did not initiate the robbery but, sheep-like, went along with it. We find no ineffective assistance.

Id.

The California Supreme Court summarily denied Weeden’s petition for review.
D. Federal Habeas Petition
Weeden then filed a 28 U.S.C. § 2254 habeas corpus petition in the United States District Court for the Eastern District of California. That court denied the petition and declined to issue a certificate of appealability. Weeden v. Johnson, No. 2:13-CV-02667-JKS, 2014 WL 6808778, at *16-18, *27 (E.D. Cal. Nov. 26, 2014). A panel of this court granted a certificate of appealability. We have jurisdiction of Wee-den’s appeal under 28 U.S.C: § 1291 and § 2258(a).
DISCUSSION
We review the district court’s denial of Weeden’s habeas corpus petition de novo. Lambert v. Blodgett, 393 F.3d 943, 964 (9th Cir. 2004). Under the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”), habeas relief may not be granted “with respect to any claim that was adjudicated on the merits in State court proceedings” unless the state decision was (1) “contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,” or (2) “based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” 28 U.S.C. § 2254(d). We apply AEDPA’s standards to “the state court’s ‘last reasoned decision’ on the claim,” in this case the decision of the California Court of Appeal. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc) (quoting Ylst v. Nunnemaker, 501 U.S. 797, 803-04, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)).
A. Deficient Performance
Under the two-pronged framework of Strickland, the Sixth Amendment guarantee of counsel in a criminal proceeding is violated if “counsel’s performance was deficient” and “the deficient performance prejudiced the defense.” 466 U.S. at 687, 104 S.Ct. 2052. Our review of the Court of Appeal’s holding that Weeden’s counsel was not deficient is “doubly” deferential, because Strickland requires state courts to give deference to choices made by counsel and AEDPA in turn requires us to defer to the determinations of state courts. Harrington v. Richter, 562 U.S. 86, 105, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) (quoting Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009)).
Even under this demanding standard of review, we conclude that -the Court of Appeal’s conclusion that Weeden’s trial counsel provided effective representation was “contrary to, or involved an unreasonable application of,” clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1). The Supreme Court- has repeatedly made plain that counsel has the “duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.” Strickland, 466 U.S. at 691, 104 S.Ct. 2052; Kimmelman v. Morrison, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); Hinton v. Alabama, — U.S. —-, 134 S.Ct. 1081, 1088, 188 L.Ed.2d 1 (2014).
*1070 The Court of Appeal did not identify any “reasonable decision” made by Weeden’s trial counsel that rendered an investigation of psychological evidence “unnecessary.” Strickland, 466 U.S. at 691, 104 S.Ct. 2052. Instead, it concluded that the choice not to investigate psychological evidence was a sound “tactical decision” because counsel feared that the results of an expert evaluation might undermine his trial strategy. Melonson, 2013 WL 1987240, at *21. But that analysis “puts the cart before the horse.” Bemore v. Chappell, 788 F.3d 1151, 1167 (9th Cir. 2015), cert. denied sub nom. Davis v. Bemore, — U.S. -, 136 S.Ct. 1173, 194 L.Ed.2d 241 (2016). Counsel cannot justify a failure to investigate simply by invoking strategy. The Supreme Court has squarely rejected the “attempt to justify [a] limited investigation as reflecting a tactical judgment.” Wiggins, 539 U.S. at 521, 123 S.Ct. 2527; see also Williams v. Taylor, 529 U.S. 362, 396, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (failure to uncover mitigating evidence was “not justified by a tactical decision” where counsel “did not fulfill their obligation to conduct a thorough investigation of the defendant’s background”). Under Strickland, counsel’s investigation must determine trial strategy, not the other way around. E.g., Bemore, 788 F.3d at 1166-67; Reynoso v. Giurbino, 462 F.3d 1099, 1112 (9th Cir. 2006); Phillips v. Woodford, 267 F.3d 966, 978 (9th Cir. 2001). Weeden’s counsel could not have reasonably concluded that obtaining a psychological examination would conflict with his trial strategy without first knowing what such an examination would reveal. Equally unpersuasive was counsel’s conclusion that the prosecution could have used the results of an examination against Weeden. While a defendant must disclose expert reports she intends to rely on at trial, Cal. Penal Code § 1054.3(a), simply procuring a report does not mean it must be produced, Sandeffer v. Super. Ct., 18 Cal.App.4th 672, 22 Cal.Rptr.2d 261, 264 (1993); Hines v. Super. Ct., 20 Cal.App.4th 1818, 25 Cal.Rptr.2d 712, 715 (1993).
The correct inquiry is not whether psychological evidence would have supported a preconceived trial strategy, but whether Weeden’s counsel had a duty to investigate such evidence in order to form a trial strategy, considering “all the circumstances.” Strickland, 466 U.S. at 691, 104 S.Ct. 2052. The answer is yes. The prosecution’s felony murder theory required proof that Weeden had “specific intent to commit the underlying felony,” People v. Jones, 82 Cal.App.4th 663, 98 Cal.Rptr.2d 724, 727 (2000), so Weeden’s “mental condition” was an essential factor in deciding whether she “actually had the required mental states for the crime,” People v. Steele, 27 Cal.4th 1230, 120 Cal.Rptr.2d 432, 47 P.3d 225, 240 (2002). The Supreme Court has repeatedly noted that the mind of a fourteen-year-old is markedly less developed than that of an adult, see, e.g., J.D.B. v. North Carolina, 564 U.S. 261, 272-73, 131 S.Ct. 2394, 180 L.Ed.2d 310 (2011); Graham v. Florida, 560 U.S. 48, 68, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010); Roper v. Simmons, 543 U.S. 551, 569-70, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), and trial counsel described Weeden as “unusually immature.”[2] Given the exculpatory potential of psychological evidence, counsel’s failure to investigate “ignored pertinent avenues for investigation of which he should have been aware.” Porter v. McCollum, 558 U.S. 30, 40, 130 S.Ct. 447, 175 L.Ed.2d 398 (2009).
*1071 Counsel’s performance was deficient because he failed to investigate, a failure highlighted by his later unreasonable justification for it. We do not suggest that counsel must investigate psychological evidence in every case, or even the ordinary case. But the Supreme Court has made clear that some “[cjriminal cases will arise where the only reasonable and available defense strategy requires consultation with experts.” Harrington, 562 U.S. at 106, 131 S.Ct. 770. For the reasons noted above, this was such a case. The Court of Appeal’s finding that counsel rendered adequate performance because he made a tactical decision not to investigate was therefore “contrary to, or involved an unreasonable application of,” clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1).
B. Prejudice
Counsel’s deficient performance justifies relief only if there is a “reasonable probability” that the jury would have reached a different result if adequate representation had been afforded. Strickland, 466 U.S. at 694, 104 S.Ct. 2052. A reasonable probability is one “sufficient to undermine confidence in the outcome.” Id. Although counsel’s deficient performance must have had more than a “conceivable effect” on the outcome, it need not have “more likely than not altered” the outcome. Id. at 693, 104 S.Ct. 2052. And, because the jury was required to reach a unanimous verdict on each count, the outcome could have differed if only “one juror would have struck a different balance.” Wiggins, 539 U.S. at 537, 123 S.Ct. 2527.[3]
Had the California Court of Appeal found that trial counsel’s performance, even if deficient, did not meet the Strickland “reasonable probability” standard, we would of course be required to afford that determination AEDPA deference. But the Court of Appeal made no such determination. Although the state court acknowledged Weeden’s argument about prejudice, it pretermitted that point, simply reiterating its previous conclusion that counsel’s performance was not deficient:
Weeden argues the lack of psychological testimony on her lack of specific intent ‘undermines confidence in the outcome of this trial’ ...
Again, trial counsel pursued the defense that Weeden did not set up the robbery or agree to it. The testimony Weeden claims counsel was ineffective in failing to present might well have undermined this defense. Among Dr. Perrine’s findings was that Weeden had a strong tendency to be a passive follower, which might have led the jury to conclude she did not initiate the robbery but, sheep-like, went along with it. We find no ineffective assistance.
Melonson, 2013 WL 1987240, at *21. Because the Court of Appeal did not reach the issue of prejudice, we address the issue de novo. Rompilla v. Beard, 545 U.S. 374, 390, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005) (examining prejudice de novo where state court did not reach the issue); Wiggins, 539 U.S. at 534, 123 S.Ct. 2527 (same); see also Porter, 558 U.S. at 39, 130 S.Ct. 447 (examining deficient performance de novo where state court did not reach the issue); Miles v. Ryan, 713 F.3d 477, 489-90 (9th Cir. 2013) (same).
Even assuming, as the dissent suggests, that the Court of Appeal reached the prejudice issue by speculating that Dr. *1072 Perrine’s testimony “might have” led the jury to the same result, Dissent at 1080-81, the state court then plainly applied the wrong legal standard. Strickland asks whether there is a “reasonable probability” of a different result, not whether the jury “might have” reached the same result. 466 U.S. at 694, 104 S.Ct. 2052. And, when the state court applies an incorrect standard, our prejudice analysis is “unconstrained” by AEDPA deference. Williams v. Taylor, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).
After evaluating Weeden, Dr. Per-rine concluded that “it is extremely unlikely she would intend to commit robbery or knowingly participate in one,” that “she would probably be slow to understand that a robbery was being considered by others if their intentions were not clearly articulated,” and that she was “quite passive and vulnerable to being manipulated by others.” This testimony from a qualified expert “would have added an entirely new dimension to the jury’s assessment” of the critical issue of Weeden’s mens rea. Vega v. Ryan, 757 F.3d 960, 974 (9th Cir. 2014) (quoting United States v. Kohring, 637 F.3d 895, 905-06 (9th Cir. 2010)). Weeden was not at the crime scene and did not personally commit either the robbery or the murder. The state’s evidence of her intent was therefore presented through testimony by others about what she said and text messages sent months after the events at issue. That evidence did not offer the kind of critical insight into the effect of Weeden’s youth on her mental state that Dr. Perrine’s conclusions provided.[4] Moreover, although the jury found Weeden guilty of attempted robbery and first-degree felony murder, she was acquitted of attempted murder. This fragmented verdict is an “additional indicator of prejudice.” Vega, 757 F.3d at 974.
The state surmises that, if Dr. Perrine had testified, it would have presented rebuttal evidence. But the record contains no such evidence. In determining how omitted evidence would have altered the trial, “we may not invent arguments the prosecution could have made.” Hardy v. Chappell, 832 F.3d 1128, 1141 (9th Cir. 2016). The state also speculates that the jury would have assigned little weight to Dr. Perrine’s testimony, because her conclusions were based on interviews conducted years after the offense. While that criticism may support a fine of cross-examination at retrial, Dr. Perrine’s testimony is uncontradicted on the record before us, and is directly probative of a critical element in the case, Weeden’s mens rea.
Considering all the circumstances of this case, we conclude that, had Dr. Perrine’s opinion been presented to the jury, the probability of a different result is “sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Counsel’s deficient performance therefore requires issuance of the writ.
C. The Dissent
We add a brief rejoinder to the concerns of our dissenting colleague. Contrary to her repeated assertions, we do not today adopt a “per se rule.” Dissent at 1073-74, 1080-81. We hold only that: (a) in a murder case involving a defendant who was fourteen years old at the time of the crime; (b) in which mens rea was critical given the defendant’s absence from the crime scene and the prosecution’s felony murder theory; (c) where the defendant’s trial counsel declined to investigate psy *1073 chological testimony because he feared what he might learn;[5] (d) where the only expert psychological report in the post-conviction record concluded that the defendant was “extremely unlikely” to have formed the requisite mens rea;[6] and (e) where the state court nonetheless concluded that the defendant received effective assistance because a psychological examination “might” have undermined counsel’s preselected strategy,[7] habeas relief should issue. A contrary conclusion would reduce the Sixth Amendment guarantee of effective representation of counsel to mere “sound and fury, signifying nothing.” William Shakespeare, Macbeth, act 5, sc. 5.
CONCLUSION
We reverse the judgment of the district court and remand with instructions to grant the writ of habeas corpus unless Weeden is timely retried.[8]

. We rely on the California Court of Appeal's recitation of the evidence. See People v. Melonson, Nos. C061352, C061800, 2013 WL 1987240, at *1-11 (Cal. Ct. App. May 15, 2013), as modified on denial of reh'g (June 14, 2013).

. Moreover, several witnesses heard Weeden talking about the robbery in advance, rendering counsel's argument that Weeden was ignorant of the robbery plan quite weak. See Bemore, 788 F.3d at 1167 (counsel’s duty to investigate mental health defense was "especially critical” where "the weaknesses of an alibi should have been known”).

. "The Strickland prejudice analysis is complete in itself; there is no place for an additional harmless-error review.” Avila v. Galaza, 297 F.3d 911, 918 n.7 (9th Cir. 2002) (alteration omitted) (quoting Jackson v. Calderon, 211 F.3d 1148, 1154 n.2 (9th Cir. 2000)).

. Although Weeden’s counsel urged the jury to consider her age and manipulability in his closing argument, the jury had scant eviden-tiary basis on which to do so in the absence of expert testimony.

. The dissent points out that Weeden’s trial counsel had "experience” with murder trials and "arguably executed his strategy at trial effectively.” Dissent at 1079. At issue, though, is not his previous experience or trial performance in general, but rather his "particular decision not to investigate” psychological testimony. Strickland, 466 U.S. at 691, 104 S.Ct. 2052.

. The dissent’s speculative suggestion that Dr. Perrine’s testimony “likely would have invited the Government to call its own forensic psychologist,” Dissent at 1082, is not grounded in the record, and it is well settled that "we do not 'evaluate all the hypothetical reasons that could have supported’ ” a state court's reasoned decision. Cuero v. Cate, 827 F.3d 879, 884 (9th Cir. 2016) (quoting Cannedy v. Adams, 706 F.3d 1148, 1157 (9th Cir. 2013)).

. The dissent offers additional possible justifications for the state court's conclusion, including an argument that defense counsel "could have reasonably believed that his time and available resources were better spent” elsewhere. Dissent at 1080. But, we review only the state court’s reasoned decision. Cuero, 827 F.3d at 884.

. Because we conclude that Weeden’s petition should be granted on the ineffective assistance of counsel claim, we do not reach her claim of instructional error.