IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | No. 36095-4-III |
| | ) | |
| DON ARTHUR MOORE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Petitioner. | ) | |

PENNELL, A.C.J. — A jury convicted Don Arthur Moore of premeditated

first degree murder. The victim was Mr. Moore's rural neighbor, Bruce Molony. The trial

evidence was detailed in our prior decision in Mr. Moore's direct appeal. *See State v.*

*Moore*, No. 32925-9-III (Wash. Ct. App. Feb. 9, 2017) (unpublished),

https://www.courts.wa.gov/opinions/pdf/329259_ord.pdf. In this review of Mr. Moore's

personal restraint petition (PRP), we focus on the theories presented at Mr. Moore's trial

and sentencing in order to discern whether Mr. Moore's trial counsel was ineffective for

failing to investigate the possibility of a mental health defense. We hold that, given the

clear signs of mental impairment, counsel's failure to secure a mental health evaluation

constituted deficient performance. However, Mr. Moore has shown that this deficiency

prejudiced him only with respect to his sentence, not the conviction. We therefore grant

Mr. Moore's PRP in part, vacate his sentence, and remand for resentencing.

No. 36095-4-III
*In re Pers. Restraint of Moore*

# BACKGROUND

*State's theory of the case*

The State claimed Don Moore murdered Bruce Molony in retaliation for Mr. Molony's theft of over $10,000 in property from Mr. Moore's residence. Mr. Moore first notified the police of the alleged thefts on April 9, 2013. When no arrest was made, Mr. Moore became frustrated. On April 19, Mr. Moore told two associates that he was going to kill Mr. Molony. The associates did not take Mr. Moore seriously. On April 20, Mr. Moore armed himself with a holstered pistol, three knives, and a pellet gun and drove out to Mr. Molony's property. Mr. Moore confronted Mr. Molony while Mr. Molony was seated outside his home. Mr. Moore made some demands of Mr. Molony and then shot Mr. Molony with the pistol while Mr. Molony remained seated.[1] After a brief pause, Mr. Moore fired several more shots, emptying his gun in the process. At that point, Mr. Molony was mortally wounded. Even so, Mr. Moore proceeded to stab Mr. Molony several times with one of his knives.

After killing Mr. Molony, Mr. Moore attempted to drive away from the scene. However, his vehicle got stuck and was unable to move. At this point, Mr. Moore

---

[1] The State theorized that Mr. Molony was seated at the time of the shooting based on the trajectory of bullet wounds discovered during an autopsy.

inflicted superficial wounds on his abdomen and head. He also made some cuts to his shirt. Mr. Moore took his knife and placed it next to Mr. Molony's body. He also stuck a knife sheath into Mr. Molony's back pocket, next to his wallet. He then deposited his gun a short distance from the knife and called 911. Mr. Moore reported that he had been stabbed and hit in the head with a rock. Mr. Moore requested an ambulance and also told the 911 operator that he had killed Mr. Molony.

## Defense theory of the case

The defense claimed Mr. Moore acted in self-defense. At trial, Mr. Moore testified that he had gone out to Mr. Molony's property in order to perform a citizen's arrest. Mr. Moore believed Mr. Molony was dangerous and he therefore armed himself with a loaded firearm, holstered inside his shirt. Mr. Moore also claimed he had only two knives in his car, not three. Mr. Moore explained that when he arrived at Mr. Molony's property, he encountered Mr. Molony seated next to his home. He confronted Mr. Molony about the alleged thefts and told Mr. Moony he was going to perform a citizen's arrest. According to Mr. Moore, Mr. Molony then came at him, flailing his arms around. Mr. Moore saw a flash of silver, which he thought was a gun, but turned out to be a knife. Mr. Molony's actions prompted Mr. Moore to shoot his gun at Mr. Molony at close range. Mr. Moore then continued to shoot because Mr. Molony did not stop moving.

3

At trial, Mr. Moore could not recall the rest of his encounter with Mr. Molony. But in pretrial statements, Mr. Moore admitted to stabbing Mr. Molony with the knife Mr. Molony had used against him. Mr. Moore acknowledged that he was the owner of the knife in question. Nevertheless, he maintained the knife was one of the many pieces of property that Mr. Molony had stolen from Mr. Moore's residence. Mr. Moore asserted he called 911 immediately after the incident. He claimed his car became stuck when he attempted to drive himself to the hospital.

*Conviction and sentencing*

The trial court instructed the jury on both first degree premeditated murder and second degree murder. It also provided jurors with a self-defense instruction. As previously noted, the jury's verdict was consistent with the State's theory of premeditated first degree murder.

Sentencing took place the morning after the jury's verdict. The State requested a high-end sentence of 404 months' imprisonment. The defense did not make a specific sentencing request, reasoning that any term of incarceration would amount to a life sentence given Mr. Moore's age (he was 67 at the time of sentencing). Defense counsel advised the court that Mr. Moore had been diagnosed with post-traumatic stress disorder

(PTSD) as a result of his service in Vietnam.[2] Mr. Moore also mentioned his military service during allocution. He stated that he was a 100 percent disabled veteran and that he had acted pursuant to his training when he killed Mr. Molony. Mr. Moore adamantly denied experiencing a blackout at the time of his confrontation with Mr. Molony. He continued to maintain that he had killed Mr. Molony in self-defense.

In imposing the sentence, the trial court noted that Mr. Moore's military service was a mitigating factor. However, the court indicated that it was not aware of "what medical diagnosis the government has provided." Report of Proceedings (Sept. 25, 2014) at 62. In selecting a term of incarceration, the court did not follow the State's recommendation of a high-end sentence. Instead, the court imposed a sentence within the upper region of the standard range, plus firearm and deadly weapon enhancements.[3]

*Postconviction developments*

Mr. Moore's judgment and sentence was affirmed on appeal. Mr. Moore then filed this PRP, alleging ineffective assistance of counsel based on trial counsel's failure to investigate his mental health history, and the possibility of a diminished capacity defense and an exceptional sentence downward at sentencing. Although one of Mr. Moore's early

---

[2] The defense did not submit any documents to support this information.

[3] The standard range plus enhancements was 324-404 months. The court imposed a total sentence of 384 months.

5

attorneys filed a motion for a medical examination to explore issues of competency and

diminished capacity, only a competency evaluation took place.[4] No evaluation regarding

Mr. Moore's mental state at the time of the offense ever occurred. According to Mr.

Moore, his trial counsel refused to investigate the possibility of a diminished capacity

defense.

In support of his ineffective assistance of counsel allegations, Mr. Moore has filed

numerous documents that were not part of the original record. They are recounted below.

Medical records submitted by Mr. Moore state Mr. Moore has a long-standing

PTSD diagnosis, stemming from his service in Vietnam. Through the years, Mr. Moore

has participated in numerous services through the United States Department of Veterans

Affairs (VA). According to VA records, after Mr. Moore was injured in Vietnam, he

"began utilizing anger/rage to combat his pain." PRP Ex. G at 2. Since that time, Mr.

Moore has struggled with his anger. He has experienced rage against the government

and a tendency to respond to external injustices with anger. Mr. Moore found that

medications helped him address his anger problems.

---

[4] The competency evaluation was based on a clinical profile, routine laboratory testing, a treatment planning session and forensic interview. Although the evaluation referred to police reports and criminal history, it did not include a review of medical or mental health records. The evaluation report does not indicate that there was any assessment of Mr. Moore's mental state at the time of the offense conduct.

The documents submitted with Mr. Moore's PRP indicate that during the months and days leading up to Mr. Molony's April 2013 death, Mr. Moore's mental health was deteriorating. In 2011, Mr. Moore began experiencing blackouts, periods of confusion, and often lost his sense of time. An MRI in December 2012 revealed that Mr. Moore had white spots on his brain. By this same time, Mr. Moore had also lost close to 60 pounds and was physically unstable. In January 2013, a VA medical provider suspected Mr. Moore was suffering from delirium secondary to drug withdrawal. Mr. Moore was provided a medication reduction plan. The plan appeared to be working, but on April 9, 2013, Mr. Moore was hospitalized after he collapsed at the sheriff's office while reporting Mr. Molony for theft. Medical records from April 14, 2013, report that Mr. Moore was having memory problems, causing him to forget what was going on around him.

One of Mr. Moore's longtime friends states that Mr. Moore was acting in a "very, very weird" manner in the weeks prior to his arrest. PRP Ex. N at 2. "He was wearing a cowboy hat with a sheriff's badge and kept calling himself the 'sheriff.' . . . He was acting totally paranoid and he constantly forgot what he was talking about. He would say, frequently, that he could not remember what he had just said." *Id.* A photograph of a hat

with a replica sheriff's badge that had been found in Mr. Moore's vehicle was admitted into evidence at trial.

Also in support of the PRP, Mr. Moore has submitted a declaration from April Gerlock Ph.D., ARNP, a board certified, adult psychiatric/mental health nurse practitioner. Dr. Gerlock explains that she has been unable to conduct a complete in-person evaluation of Mr. Moore due to lack of funds. However, based on a review of Mr. Moore's record and the case file, Dr. Gerlock believes that Mr. Moore's PTSD could have caused him to experience heightened arousal and aggression at the time of Mr. Molony's death. According to Dr. Gerlock, an evaluation of how Mr. Moore's PTSD affected his state of mind in the weeks leading up to Mr. Molony's death was warranted.

In response, the State has filed a declaration from Mr. Moore's trial counsel. Trial counsel states that he did not investigate a mental health defense because Mr. Moore felt there was no need for a mental health evaluation and was adamant that he knew exactly what he had done. According to trial counsel, "Mr. Moore's version of the events that led up to the incident as well as the facts of the incident itself was consistent during the entirety of my representation." State's Response to PRP, App. J at 2. "Mr. Moore clearly knew what he was doing and what was happening at [the point he shot Mr. Molony]. There was no reason to raise a mental health defense and Mr. Moore agreed." *Id*. at 4.

This court's initial screening of Mr. Moore's PRP determined his claims for relief were not frivolous. Thus, the case was referred to a panel of judges for review on the merits.

ANALYSIS

The right to effective assistance of counsel is guaranteed both by the federal and state constitutions. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. To prevail on an ineffective assistance of counsel claim, a litigant must show that counsel performed deficiently and that this deficient performance was prejudicial. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Proof of both prongs of this analysis are necessary to warrant relief. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). We therefore review each in turn.

*Deficient performance*

We assess the sufficiency of trial counsel's conduct according to the facts and circumstances known at the time of representation and invoke "a strong presumption that counsel's conduct" was reasonable. *Id*. at 689. This is an extremely deferential standard of review. But it has limits. If counsel's decisions about how to proceed with representation are based on inadequate preparation or investigation, they cannot be deemed reasonable. *See Wiggins v. Smith*, 539 U.S. 510, 524-26, 123 S. Ct. 2527,

156 L. Ed. 2d 471 (2003). Reasonable investigation "includes expert assistance necessary to an adequate defense." *State v. Punsalan*, 156 Wn.2d 875, 878, 133 P.3d 934 (2006) (citing *Ake v. Oklahoma*, 470 U.S. 68, 72, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985)).

Mr. Moore's trial counsel has disclosed that he did not investigate the possibility of a mental health defense because Mr. Moore felt there was no need for a mental health evaluation, Mr. Moore appeared to know exactly what he had done, and because Mr. Moore had a viable self-defense claim. Trial counsel also explains that he could not discern how Mr. Moore's PTSD could have provided a defense to the State's charge of premeditated murder.

Trial counsel's explanation of his representation strategy falls short because it "puts the cart before the horse." *Bemore v. Chappell*, 788 F.3d 1151, 1166-67 (9th Cir. 2015). Mr. Moore has not alleged that his attorney settled on the wrong trial strategy. The argument is that counsel failed to investigate prior to choosing a strategy. The constitutional guarantee of effective assistance of counsel dictates that counsel's investigation "determine[s] trial strategy, not the other way around." *Weeden v. Johnson*, 854 F.3d 1063, 1070 (9th Cir. 2017). "Counsel cannot justify a failure to investigate simply by invoking strategy." *Id.*

The record amply supports the assertion that trial counsel was on notice of Mr. Moore's impaired mental state. Trial counsel was aware that Mr. Moore had suffered from combat-related PTSD, regularly suffered from blackouts, and experienced a series of unusual medical incidents in the weeks prior to his arrest.

In addition, there were facts suggesting a mental impairment may have had relevance to Mr. Moore's offense conduct. At the time of his arrest, Mr. Moore was in his late 60s and had no history of felonious conduct. Mr. Moore appears to have been fixated on his belief that he was entitled to act as a sheriff and had even carried a hat with a false sheriff's badge in his car. Although only 10 days had passed since his theft report to law enforcement, Mr. Moore had grown despondent and believed that he needed to take matters into his own hands. These circumstances raise the possibility that Mr. Moore might have been suffering from some sort of delusional disorder, in addition to PTSD, that impacted Mr. Moore's actions against Mr. Molony.

Given Mr. Moore's obvious struggles with mental health, defense counsel had a duty to obtain a psychological evaluation before rejecting the possibility of a mental health defense. *See In re Pers. Restraint of Davis*, 188 Wn.2d 356, 376, 395 P.3d 998 (2017). Without an expert evaluation, defense counsel was not in a position to reject the viability of a mental health defense based on his own assumptions about PTSD.

11

Although Mr. Moore may have seemed adverse to such a defense (a fact that Mr. Moore disputes), this was not a valid reason for failing to investigate.[5] It is hardly unusual for an individual who is suffering from mental illness to struggle with accepting the existence of a disorder. Regardless of Mr. Moore's resistance, defense counsel had a duty to investigate Mr. Moore's condition and then, once armed with an evaluation, counsel Mr. Moore on whether to raise a mental health defense. The failure to do so constituted deficient performance.[6]

*Prejudice*

The fact that trial counsel performed deficiently does not automatically entitle Mr. Moore to relief. Mr. Moore must also establish prejudice. This involves demonstrating

---

[5] The State claims Mr. Moore was adamantly opposed to asserting a mental health defense. The record does not support this claim. The declaration from Mr. Moore's trial attorney states that the attorney was told by Mr. Moore's original counsel that Mr. Moore was "unhappy with [the] decision to file a motion for competency evaluation and that Mr. Moore felt that there was no need for any mental health evaluations." State's Response to PRP, App. J at 1-2. While trial counsel's declaration states that Mr. Moore "was adamant that he did nothing wrong" and that "[h]e was firm in his commitment to a self-defense strategy," *id.* at 4, the declaration does not state that Mr. Moore was adamantly opposed to a mental health evaluation (which is not the same thing as a competency evaluation) or that he would have refused to participate in an evaluation.

[6] This is not a case where exploration of Mr. Moore's mental state would have undermined Mr. Moore's proffered defense theory. *Cf. Bean v. Calderon*, 163 F.3d 1073, 1082 (9th Cir. 1998). Evidence regarding Mr. Moore's mental health could have been relevant to explaining the perceived problems with Mr. Moore's testimony and memory.

a "'reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Grier*, 171 Wn.2d at 34 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)); *see also In re Pers. Restraint of Lui*, 188 Wn.2d 525, 538, 397 P.3d 90 (2017); *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012). This reasonable probability "is a probability sufficient to undermine confidence in the outcome," and is thus lower than the preponderance standard. *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017) (citing *Strickland*, 466 U.S. at 694).

Mr. Moore's primary claim is that defense counsel's failure to investigate a mental health defense caused him to be wrongly convicted. Had defense counsel conducted an adequate investigation, Mr. Moore proffers that he would have been able to raise the defense of diminished capacity and obtain either acquittal or a lesser conviction for manslaughter.

Mr. Moore recognizes that, as the record currently stands, he is unable to substantiate his claim of prejudice at trial. In order to have raised a diminished capacity defense, Mr. Moore would need expert testimony, explaining how his "mental condition specifically related to his ability to achieve a culpable mental state." *State v. Gough*, 53 Wn. App. 619, 622-23, 768 P.3d 1028 (1989). The current record is insufficient to

suggest that Mr. Moore might have been able to obtain such testimony. Though the record

establishes that Mr. Moore suffers from PTSD and that he was having emotional

problems at the time of his arrest, there is nothing in the record indicating Mr. Moore

would be able to present a jury with admissible expert testimony linking his mental

condition to the crime of first degree premeditated murder.

Given the state of the record, Mr. Moore requests the court approve expert funds

so that he may obtain a full psychological evaluation and make an adequate showing of

trial prejudice. This is an unusual request, and one that lacks a clear legal basis. There

is no constitutional right to investigative assistance in postconviction proceedings. *In re*

*Pers. Restraint of Gentry*, 137 Wn.2d 378, 390, 972 P.2d 1250 (1999). Whereas the rules

of appellate procedure contemplate the possibility of postconviction expert appointments

in the death penalty context, *see* RAP 16.27, there is no similar provision that applies to

standard PRPs. In addition, even in the death penalty context, our court rules only allow

for expert funds when there has been legislative authorization and approved funding.

We are unaware of any authorization or approval of expert funds in the nondeath penalty

PRP context.

The only rule that allows expenditure of funds outside the death penalty context is

RAP 16.15(h). Under that rule, the court of appeals

14

> may provide for the appointment of counsel at public expense for services in the appellate court, order waiver of charges for reproducing briefs and motions, provide for the preparation of the record of prior proceedings and *provide for the payment of such other expenses as may be necessary to consider the petition in the appellate court*."

(Emphasis added.) This rule does not obviously apply to expert services. Expert services are necessary to develop a PRP, not for consideration thereof.

At best, RAP 16.15(h) might allow for appointment of expert services "in rare circumstances where the petitioner can demonstrate a substantial likelihood" of discovering "evidence that would compel relief under RAP 16.4(c)." *Gentry*, 137 Wn.2d at 392. Such evidence "must be specific to petitioner's own case." *Id*. There is no legal authority for "appointment of investigators or experts to identify or develop grounds for challenging convictions or sentences." *Id*.

Mr. Moore has not satisfied this difficult standard for appointment of expert services on appeal. Dr. Gerlock's preliminary report fails to suggest how Mr. Moore's mental condition might have undermined his conviction for premeditated murder. The State's theory was that Mr. Moore developed an intent and plan to kill Mr. Molony prior to the date of the homicide. Dr. Gerlock's report does not explain how PTSD could have undermined Mr. Moore's capacity to form intent over such a prolonged period of time. As the record currently stands, Mr. Moore has not made an adequate showing that

15

appointment of Dr. Gerlock to complete her analysis would compel relief from his

judgment of conviction. *See State v. Bottrell*, 103 Wn. App. 706, 719-20, 14 P.3d 164

(2000) (evidence of PTSD not relevant to rebut premeditated intent). While it could

be that Mr. Moore was suffering from a disorder beyond typical PTSD that might have

impaired his thinking over a substantial period of time, Dr. Gerlock's report does not raise

this possibility. Judicial speculation, alone, does not warrant expert appointment under

RAP 16.15(h).

Mr. Moore argues that if this court does not grant his request for expert services,

the matter should be remanded to the superior court so that Mr. Moore can make a request

to the superior court judge. This argument lacks legal support. A PRP may be transferred

from the court of appeals to the superior court under RAP 16.11(b) "only if the petitioner

demonstrates he or she has competent, admissible evidence establishing facts which

would require relief." *In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 473, 965 P.2d 593

(1998). Transfer is not appropriate to allow for the development of competent evidence

through appointment of expert services.

Whereas Mr. Moore has not shown adequate prejudice either to justify relief

from conviction or for appointment of an expert to examine the possibility of relief from

conviction, the same is not true of his claim with respect to sentencing. Even where

insufficient to justify a diminished capacity defense, evidence of the defendant's

diminished capacity may justify an exceptional sentence downward, RCW 9.94A.535(1)(e),

or at least a sentence at the low end of the standard range. Here, the evidence submitted

along with Mr. Moore's PRP suggests not only general impairment from PTSD, but

extreme anxiety and aggression caused by combat-induced trauma. Mr. Moore's experience

with trauma has, historically, diminished his ability to handle perceived injustices. While

medications had helped Mr. Moore deal with this problem in the past, his medications were

being tapered off at the time of his offense conduct. Mr. Moore's behavior prior to the

offense, especially his practice of representing himself to others as a sheriff, may have

indicated the presence of some delusions. Although there is no evidence to indicate Mr.

Moore's impairment was sufficient to justify a defense to the crime charged, there is reason

to believe that an investigation of Mr. Moore's mental health and military service would

have led to a plausible case for either an exceptional sentence downward or, at least, a

sentence at the low end of the standard range.[7]

---

[7] Mr. Moore's sentence of 384 months was 5 years longer than the low end of the standard range.

17

Mr. Moore has demonstrated that he was prejudiced at sentencing due to defense counsel's failure to conduct a reasonable investigation of his mental state. As such, Mr. Moore's sentence must be vacated and the matter remanded for resentencing.[8]

CONCLUSION

Mr. Moore's PRP is granted in part. Mr. Moore's petition for relief from conviction is denied. However, we grant the request for relief from his sentence. Mr. Moore's sentence is vacated and this matter is remanded to the superior court for resentencing and any additional proceedings as may be deemed appropriate. Mr. Moore's motion for expert services under RAP 16.15(h) is denied. The motion for current counsel to be appointed as counsel at public expense is denied as current counsel is not presently under contract with the Office of Public Defense for cases in Division Three of the Court of Appeals. All other pending motions are denied as moot.

---

[8] Mr. Moore makes two additional claims of ineffective assistance, neither of which warrant significant analysis. First, Mr. Moore claims defense counsel performed deficiently in failing to seek to exclude Mr. Moore's pretrial statements to police as involuntary. This claim fails for lack of factual support. A statement to police cannot be excluded as involuntary unless it was elicited by coercive police activity. *State v. Unga*, 165 Wn.2d 95, 100-01, 196 P.3d 645 (2008). The record here lacks evidence of coercion. Second, Mr. Moore argues counsel was ineffective in failing to object to the prosecutor's statement during voir dire that Mr. Moore was not facing a capital case. This argument was raised on direct appeal and Mr. Moore has not established a basis for revising our prior decision. *See In re Pers. Restraint of Davis*, 152 Wn.2d 647, 670-72, 101 P.3d 1 (2004).

No. 36095-4-III
*In re Pers. Restraint of Moore*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, A.C.J.

I CONCUR:

_____
Siddoway, J.

No. 36095-4-III

KORSMO, J. (concurring) — I concur in the result because there was mental health history information that should have been called to the attention of the trial court at sentencing. However, I disagree with the majority's pronouncement that trial counsel was deficient by not conducting a deeper investigation into Mr. Moore's mental health background. The majority correctly concludes that in the absence of evidence that there was a viable diminished capacity defense, Mr. Moore cannot establish prejudice and this personal restraint petition (PRP) necessarily fails. That should have been the end of its analysis.

Courts must evaluate counsel's performance using a two-prong test that requires determination whether or not (1) counsel's performance failed to meet a standard of reasonableness and (2) actual prejudice resulted from counsel's failures. *Strickland v. Washington*, 466 U.S. 668, 690-692, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Review is highly deferential and we engage in the presumption that counsel was competent; moreover, counsel's strategic or tactical choices are not a basis for finding error. *Id*. at 689-691. Thus, an attorney's failure to perform up to the standards of the profession will require a new trial when the client has been prejudiced by counsel's failure. *State v.*

*McFarland*, 127 Wn.2d 322, 334-335, 899 P.2d 1251 (1995).  When a case can be resolved on one prong, there is no need to analyze the other.  *Strickland*, 466 U.S. at 697.

Since this case fails due to lack of prejudice, the majority's discussion about counsel's alleged obligation to dig further into possible mental health defenses is only dicta.  It is also erroneous.  The majority cites *In re Personal Restraint of Davis*, 188 Wn.2d 356, 376, 395 P.3d 998 (2017), in support of its conclusion that counsel had a duty to obtain a psychological evaluation before rejecting a mental health defense.  That cite does not support the proposition.  In *Davis*, the argument before the court was a claim that trial counsel erred in not having the right type of expert testify in support of its defense.  The cited page of the opinion contains a recitation of earlier death penalty cases where the court determined that trial counsel either had or had not called the proper expert to support its defense.  *Id*.  It does not support the conclusion that one must always obtain an expert evaluation before rejecting a mental health defense.  Indeed, *Davis* itself concluded that the PRP failed to establish that counsel was deficient.  *Id*. at 378.

The majority's argument is also a curious one because an evaluation had been performed by Eastern State Hospital that determined Mr. Moore was competent to stand trial.  That evaluation noted Mr. Moore's prior history of PTSD, but concluded that his memory was excellent.  Mr. Moore also conveyed his self-defense theory to the evaluator.  The evaluator suggested that Moore's behavioral history might justify an

evaluation for possible involuntary commitment per ch. 71.05 RCW since he appeared to be a danger to himself and others.

Nothing in the evaluation suggests that there was a reason to pursue a diminished capacity defense.[1] Moreover, Moore's own statements to the police and the Eastern State Hospital evaluator show that he purposefully acted in self-defense. While self-defense and diminished capacity are not necessarily exclusive defenses, they are exclusive under the facts of this case. Raising diminished capacity would undercut self-defense by calling Mr. Moore's veracity into question. ("My client did not have the capacity to know what he was doing when he said he acted in self-defense.") And given that he displayed purposeful behavior in planning and shooting his victim, any diminished capacity defense would also be a very hard sell indeed, especially in light of his statements to law enforcement.

*Strickland* recognizes that the conversations between client and attorney guide, and might even eliminate, the attorney's duty to investigate. 466 U.S. at 691. "And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Id*. Here, there was no obvious reason to

---

[1] The majority's speculation that Mr. Moore might have been suffering delusions would suggest a possible psychoses. However, a psychotic break would indicate possible insanity, not diminished capacity. No one has suggested insanity is a concern in this case.

3

pursue a diminished capacity defense and a very strong reason to pursue self-defense—the defendant was telling everyone in the world, as he would later tell the jury, that he acted in self-defense. Defense counsel did not have to investigate the possibility of diminished capacity further in light of the competency evaluation and his client's own statements that he acted in self-defense.

While that explains my disagreement with the majority's analysis, I will briefly add a few comments about the PRP itself. Washington does not have a state-funded postconviction relief process and the majority correctly rejects Mr. Moore's argument to obtain state funding for efforts here. His tortured argument from the Rules of Appellate Procedure is absolutely unavailing. Washington court rules cannot create substantive rights. *E.g.*, *State v. Templeton*, 148 Wn.2d 193, 213, 59 P.3d 632 (2002). The right to attorney and experts found in RAP 16.25 and RAP 16.27 for death penalty cases are based on statutory authorization. RCW 10.73.150(3). Those rules also require advance court authorization before appointment of counsel or retention of experts.

Similarly, our right to appoint counsel for non-frivolous PRPs in RAP 16.15(h) is authorized by RCW 10.73.150(4). Appointment is authorized only after a PRP of sufficient merit has been filed that counsel would be of assistance to the appellate court. The rule and statute simply do not allow for courts to go backwards and pay for expenses already incurred in preparing a PRP. Mr. Moore's effort to use the court rules to create

4

an expansive right to postconviction assistance of counsel and experts is totally without

legislative authorization. He needs to go to that body if he wants to change the law.

With those observations, I concur in the result.

_____
Korsmo, J.